IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                          Crim. No. 20-1486 KG

DONALD ALFRED BUSCH,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Donald Alfred Busch's "Motion to Sever and Memorandum in Support" (Motion to Sever), filed May 7, 2021. (Doc. 104). The Motion to Sever is now fully and timely briefed. *See* (Docs. 103, 107, 108, 110). Having considered the briefing, the Superseding Indictment (Doc. 93), the United States' submissions (Docs. 107 and 108), the controlling law, and for the following reasons, the Court denies the Motion to Sever without prejudice.

*I. The Superseding Indictment*

This case involves a carjacking resulting in the death of J.S. Count 1 charges conspiracy to commit carjacking against all Defendants: Stetson Shane Barnes, Donald Alfred Busch, Jehra Lynn Hedgecock, and Tyson Lee Terrell. Count 1 alleges that from May 27, 2019, to May 28, 2019, Defendants "were at a mobile home on a property shared by" Barnes and Terrell. (Doc. 93) at 2. While there, Busch allegedly "solicited the assistance of" Barnes, Hedgecock, and Terrell to go "to J.S.'s home to physically assault J.S. and take one of J.S.'s motorcycles." *Id.* According to Count 1, "Hedgecock agreed to use her truck to transport the motorcycle that the group intended to take from J.S." *Id.*

Count 1 further alleges that on May 28, 2019, Hedgecock drove Barnes, Busch, and Terrell "to J.S.'s home where they intended to physically assault J.S. and take one of J.S.'s motorcycles." *Id.* Hedgecock purportedly "knocked on the front door of J.S.'s home in an attempt to draw J.S. out of his home." *Id.* at 3. Meanwhile, Busch allegedly found the motorcycle "he intended to take under J.S.'s carport and began the process of pushing the motorcycle off of J.S.'s property." *Id.*

Count 1 alleges that when J.S. exited his home Barnes, Hedgecock, and Busch each pointed a firearm at J.S. *Id.* At the same time, Terrell supposedly "unsuccessfully attempted to jumpstart a different motorcycle while standing under J.S.'s carport." *Id.* According to Count 1, after Barnes, Hedgecock, and Busch pointed their firearms at J.S., "Hedgecock got into the driver's seat of her truck;" "Terrell got into the front passenger seat of" the truck; "Barnes got into the back seat of" the truck; and "Busch pushed the stolen motorcycle off of J.S.'s property." *Id.*

Count 1 also alleges that as Hedgecock drove away from J.S.'s home, "Barnes fired multiple rounds of ammunition from the back seat of … Hedgecock's truck into J.S.'s home." *Id.* "One of those rounds of ammunition" allegedly "struck and killed J.S." *Id.* Hedgecock then purportedly "stopped her truck on the side of the road" so Barnes and Terrell could help Busch load the stolen motorcycle onto the bed of Hedgecock's truck. *Id.* at 4. Finally, Count 1 alleges that Hedgecock drove Barnes, Busch, and Terrell back to Barnes' mobile home. *Id.*

Count 2 charges all Defendants with carjacking resulting in a death as well as aiding and abetting. Counts 3 and 4 charge Hedgecock and Busch, respectively, with brandishing a firearm in relation to a crime of violence. Count 5 charges Barnes with brandishing a firearm and discharging a firearm in relation to a crime of violence, which caused a death. In Counts 6 and 7,

Barnes and Busch, respectively, are charged with being felons in possession of a firearm and ammunition.

*II. The Motion to Sever*

Busch moves under Fed. R. Crim. P. 14 to sever his trial from the trial of the other co-Defendants.[1] The United States opposes the Motion to Sever in its entirety.

*III. Discussion*

Federal Rule of Criminal Procedure 8(b) sets forth the parameters under which an indictment may charge two or more defendants. Pursuant to Rule 8(b), an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Furthermore, Rule 8(b) directs that "[a]ll defendants need not be charged in each count" to be charged together in one indictment.

Federal Rule of Criminal Procedure 14(a), however, circumscribes the prosecutor's broad authority under Rule 8(b) to join multiple defendants in a single indictment, explaining that "[i]f the joinder of … defendants in … a consolidation for trial appears to prejudice a defendant …, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Both the Advisory Committee Notes following Rule 14 and the Tenth Circuit state that "the question whether to grant a severance is generally left within the discretion of the trial court." Fed. R. Crim. P. 14 advisory committee notes, 1966 amendment; *see also United States v. Hutchinson*, 573 F.3d 1011, 1026 (10th Cir. 2009) (noting that

---

[1] The Court notes it granted Busch's request that the Court "conduct an *in camera* review of the evidence pursuant to Federal Rule of Criminal Procedure 14(b)…." (Doc. 104) at 5. On May 6, 2021, the Court ordered the United States to file the police statements made by Hedgecock, Terrell, and Busch. (Doc. 103). The United States has now filed those statements with the Court. *See* (Docs. 107, and 108).

3

"tailoring of the relief to be granted, if any, is left to the district court's sound discretion") (citation omitted).

It is well-established that joint trials of multiple defendants who are indicted together "are preferred because 'they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Hall*, 473 F.3d 1295, 1301 (10th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)); *see also United States v. Rogers*, 921 F.2d 975, 984 (10th Cir. 1990) (stating that "we strike a balance in favor of joint trials") (internal quotations omitted). "Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case" to convince a court not to hold a joint trial. *Hall*, 473 F.3d at 1302 (citation omitted); *see also United States v. Hutchinson*, 573 F.3d 1011, 1025 (10th Cir. 2009) (holding that defendant "was obliged to show, among other things, that the denial of severance would result in 'actual prejudice' to his defense") (internal citation omitted).

The Tenth Circuit has articulated a three-step inquiry to guide lower courts in considering a defendant's motion to sever. *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007). First, courts must consider "whether the defenses presented are 'so antagonistic that they are mutually exclusive.'" *Id.* (quoting *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989)). Second, "a defendant must further show 'a serious risk that a joint trial would compromise a specific trial right … or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539). Third, and finally, courts must "weigh[] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* (citing *Peveto*, 881 F.2d at 857).

4

### A. First Step: Antagonistic Defenses

"A mere conflict of theories or one defendant's attempt to cast blame on another does not require severance." *Peveto*, 881 F.2d at 857. "Defenses are mutually antagonistic if 'the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'" *Pursley*, 474 F.3d at 765 (citation omitted). Put another way, defendants must show that "the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other." *Id.* (quoting *Peveto*, 881 F.2d at 857).

Here, Busch asserts "that he needed a ride to pick up a bike, and that the other defendants decided to tag along." (Doc. 104) at 3. Busch then maintains that "[a]ny evidence indicating there was a plan to commit any crime would come only from evidence in the trials of the other defendants." *Id.* Busch does not indicate what defenses co-Defendants will pursue, let alone how they would be mutually antagonistic to his defense.

Nonetheless, the Court notes that to convict a defendant of carjacking, the United States must

> prove beyond a reasonable doubt the following elements: (1) that [the defendant] took a motor vehicle from the person or presence of another; (2) that he did so by force, violence or intimidation; (3) that [the defendant] intended to cause death or serious bodily harm; and (4) that the motor vehicle had been transported, shipped, or received in interstate or foreign commerce.

*United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir. 2006). In this case, Busch seems to argue that he merely intended "to pick up a bike," which implies that he intended to retrieve the motorcycle lawfully. *See* (Doc. 104) at 3. Accordingly, Busch contends that the United States cannot prove beyond a reasonable doubt the first element of the carjacking charge as it applies to him.

However, "subjective motivation in acquiring possession or control of the victim's vehicle is irrelevant to whether the government established the 'taking' element of 18 U.S.C. § 2119." *Id.* As the Tenth Circuit explained, "to establish element one, the government need only show that the defendant engaged in the prohibited conduct, i.e., acquiring possession or control of the victim's vehicle in the presence of another by force or intimidation." *Id.* The taking element does not require an intent to steal. *United States v. Payne*, 83 F.3d 346, 347 (10th Cir. 1996) (disagreeing with defendant that "the taking element requires an intent to steal….").

On the other hand, "the taker's purpose and motives in taking the vehicle have relevance on the issue of whether he had the requisite criminal intent for carjacking (element three) (intention to cause death or serious bodily harm)…."[2] *Id.* "[T]he intent element can be satisfied when the government proves that the defendant possessed a 'conditional intent' at the time he demands or takes control of the car—that is, the government need not prove that the defendant possessed 'a specific and unconditional intent to kill or harm in order to complete the proscribed offense.'" *United States v. Folse*, 2021 WL 1749472, at *10 (10th Cir.). In other words, conditional intent requires that the defendant intended "to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Holloway v. United States*, 526 U.S. 1, 11–12 (1999).

Busch's belief that he intended to retrieve the motorcycle lawfully is plainly not relevant to the third carjacking element, whether Busch intended to cause death or serious bodily harm, if necessary, to take the motorcycle, lawfully or not. *Id.* at 1245. Given that Busch's purported

---

[2] The Court notes that the Tenth Circuit agrees with the First Circuit's "holding that a defendant can be found guilty of aiding and abetting under § 2119[, the carjacking statute,] if he 'consciously shared some knowledge of the principal's criminal intent.'" *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005) (citation omitted).
6

defense is not a defense to the carjacking charge, Busch has failed to show that he has a defense that is mutually antagonistic to the defenses of co-Defendants.

>    B. *Second Step: Serious Risk that Joint Trial would Compromise Specific Trial Rights* or *Prevent a Jury from Making a Reliable Judgment about Guilt or Innocence*

Busch argues that a joint trial would compromise his constitutional rights to confront and cross-examine witnesses at trial if co-Defendants' incriminating police statements are introduced at a joint trial and co-Defendants do not testify.

In its response, the United States dispels Busch's concerns about a joint trial compromising his constitutional trial rights. First, the United States notes that Hedgecock is a cooperating witness who will testify at trial. Busch, therefore, will have an opportunity at trial to confront Hedgecock and cross-examine her about any incriminating police statements.

Second, Terrell's statements arose from a "*Kastigar*-protected debrief." (Doc. 110) at 8; *see also* (Doc. 104) at 4. "Pursuant to the government's agreement with Terrell, no statement made by Terrell during the course of the debrief could be used during the government's case-in-chief." *Id.* "[I]f Terrell testified at trial and made statements inconsistent with what he said at the *Kastigar* debrief, then the government could introduce evidence regarding such statements to rebut any evidence or factual assertions made by or on behalf of Terrell." *Id.* In that situation, like with Hedgecock, Busch would have an opportunity at trial to confront and cross-examine Terrell.

Third, according to the United States, Barnes "immediately invoked his right to counsel and has not provided any statements to law enforcement whatsoever." (Doc. 110) at 9. Consequently, Busch cannot argue that he would be unable to cross-examine Barnes as to any extrajudicial statements.

*C. Third Step: Weighing Prejudice to Busch against Economy and Expedition in Judicial Administration*

To begin with, the Court determines that the case is not so complex that a joint trial will prejudice Busch. Indeed, "there is no prejudice if the evidence is such that the jury could compartmentalize it against each defendant," which is the case here. *See United States v. Hines*, 696 F.2d 722, 732 (10th Cir. 1982).

Also, to the extent that any prejudice could infect Busch's right to a fair trial, "[l]imiting instructions are ordinarily sufficient to cure potential prejudice." *Hardwell*, 80 F.3d at 1487 (citation omitted); *see also Zafiro*, 506 U.S. at 538-39 (noting that "[m]utually antagonistic defenses are not prejudicial *per se*" and "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion"). The Court will, as it normally does, instruct the jury to consider guilt and innocence separately for each Defendant. The Court further observes that

> when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro*, 506 U.S. at 539. Here, Busch simply has not carried his heavy burden of demonstrating "real" or "actual" prejudice should the Court hold a joint trial.

With respect to the "important considerations of economy and expedition in judicial administration," separate trials for Busch and his co-Defendants require the United States to present its case twice. *See Pursley*, 474 F.3d at 765 (citing *Peveto*, 881 F.2d at 857). As the

8

Court finds no prejudice to Busch if all Defendants are tried together, the Court need not balance prejudice against "considerations of economy and expedition" in conducting two separate trials. *See also id.* at 767 (explaining that when the court "found no prejudice at all," there was "nothing to balance in this step"). Therefore, "considerations of economy and expedition in judicial administration" necessarily prevail in this situation. *See also id.* at 765 (citing *Peveto*, 881 F.2d at 857).

D. Conclusion

The Court concludes first that Busch does not have a defense that would be "so antagonistic that they are mutually exclusive." *Peveto*, 881 F.2d at 857. Second, the Court concludes that Busch has not demonstrated "a serious risk that a joint trial would compromise a specific trial right…." *See Zafiro*, 506 U.S. at 539. Third, the Court concludes that Busch will not suffer any "real" or "actual" prejudice in a joint trial. In light of these conclusions and the judicial preference to conduct trials jointly, Busch is not entitled to a severed trial under Rule 14(a). The Court, thus, denies the Motion to Sever without prejudice.

IT IS ORDERED that "Motion to Sever and Memorandum in Support" (Doc. 104) is denied without prejudice.

_____
UNITED STATES DISTRICT JUDGE