IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                   Cr. No. 20-1486 KG

DONALD ALFRED BUSCH,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion to Suppress Donald A. Busch's Statement and Memorandum in Support (Motion to Suppress), filed June 16, 2021. (Doc. 117). The United States filed a response on June 30, 2021. (Doc. 126). On July 15, 2021, the Court held an evidentiary hearing on the Motion to Suppress. Maria Armijo and Ryan Ellison represented the United States at the evidentiary hearing, and Cesar Pierce-Varela and Luke Ragsdale represented Defendant Busch, who was present.

Having considered the briefing, the United States' Exhibits 1-3, the credible testimony of Eddy County Sheriff's Office (ECSO) Sergeant Tim Satterfield, the argument by counsel at the evidentiary hearing, the controlling law and for the following reasons, the Court denies the Motion to Suppress.

*I. Findings of Fact*

Defendant Busch is charged in this case with carjacking a motorcycle, resulting in a death, as well as with other related charges. (Doc. 93). At the time of his arrest, Defendant Busch was also charged with a state open charge of murder and related offenses. The events

giving rise to the above charges occurred between May 27 and May 28, 2019, in Eddy County, New Mexico.

On June 4, 2019, Sergeant Satterfield, the lead investigator in the case against Defendant Busch, and at least four other officers, all dressed in tactical gear, entered a trailer where they arrested Defendant Busch. An hour or two later, at 3:45 p.m., Sergeant Satterfield and ECSO Detective Amy Dugas interviewed Defendant Busch in an ECSO interview room. Sergeant Satterfield was the primary interviewer while Detective Dugas was the secondary interviewer. No other persons were present, except for Defendant Busch.

Defendant Busch, Sergeant Satterfield, and Detective Dugas were seated across from each other in a small interview room. Sergeant Satterfield and Detective Dugas wore civilian clothing. Defendant Busch was handcuffed.

Throughout the interview, Defendant Busch remained calm. He understood the questioning and responded appropriately. Defendant Busch was not impaired during the interview. Defendant Busch, who is in his 30s, has a ninth-grade education and has worked as a roughneck in the oilfields. Defendant Busch also has had at least one prior criminal arrest and conviction. *See* (Doc. 93) at 6.

Sergeant Satterfield began the interview by reading Defendant Busch his *Miranda* rights from a *Miranda* advisement form and asking Defendant Busch if he understood that. (Doc. 126-1) at 2. Defendant Busch replied, "Okay." *Id.* In the video of the interview, Defendant Busch nods his head up and down as well. Sergeant Satterfield then handed Defendant Busch the *Miranda* advisement form (*Miranda* waiver) and asked Defendant Busch to "[g]o ahead and read each line. If you understand it, just initial. If you need me to clarify, let me know." (Doc. 126-1) at 2. Defendant Busch did not indicate that he needed additional clarification. Defendant

2

Busch then initialed and signed the waiver.  The fact that Defendant Busch was handcuffed did not impede his ability to read the waiver.

The interview lasted approximately 80 minutes.  After about 40 minutes, the interviewing officers took an approximately five-minute break.  Defendant Busch received a bottle of water after the break but was not re-*Mirandized*.  At no point during the interview did Defendant Busch invoke his right to an attorney.

Defendant Busch now argues that his statements to the interviewing officers was not the product of a knowing, intelligent, and voluntary waiver of his Fifth Amendment right against self-incrimination.  Defendant Busch specifically asserts that the initial *Miranda* waiver was not valid and that he should have been re-*Mirandized* after the break in the interview.

## II. Discussion

### A. The Initial Miranda Rights Waiver

"To be valid, a waiver of *Miranda* rights 'must be made voluntarily, knowingly, and intelligently.'" *United States v. Guillen*, 995 F.3d 1095, 1123 (10th Cir. 2021) (citation omitted). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  Notably, "[a]n express statement of waiver by the defendant is not required; instead, waiver can be inferred from the defendant's actions and words." *United States v. Toro–Pelaez,* 107 F.3d 819, 825 (10th Cir.1997).  "The government has the burden of proving a valid waiver by a preponderance of the evidence." *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008).

3

*1. Knowing and Intelligent Waiver of Miranda Rights*

"A waiver is made knowingly and intelligently when made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 1257 (citation omitted). In other words, a defendant "must be 'made aware of the dangers and disadvantages ... so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Id.* (citation and quotation marks omitted). "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

Defendant Busch argues that he did not knowingly waive his *Miranda* rights for several reasons. First, Defendant Busch contends that the interviewing officers did not "verbally ascertain whether Mr. Busch understood the rights of which he was being advised" nor did they "attempt[] to verify that Mr. Busch understood what rights he would be giving up if he chose to speak with them." (Doc. 117) at 3. Second, Defendant Busch contends that Sergeant Satterfield quickly read through the *Miranda* advisement form, the reading of the *Miranda* advisement form was *pro forma*, and that it was physically difficult for Defendant Busch to read the *Miranda* waiver because of the handcuffs.

Contrary to Defendant Busch's contentions, the Court finds that the video of the interview shows that Sergeant Satterfield did inquire whether Defendant Busch understood his *Miranda* rights and Defendant Busch indicated that he did, both verbally and non-verbally. Also, Defendant Busch has not convinced the Court that the manner in which Sergeant Satterfield read the *Miranda* advisement form was not understandable or not clear. The video of the interview further shows that Defendant Busch was able to read the *Miranda* waiver despite being handcuffed. Importantly, Defendant Busch did not seek any clarification of the waiver even after

4

Sergeant Satterfield stated he could provide clarification, if needed. Finally, as the United States correctly notes, Defendant Busch has had prior arrests and so is familiar with the criminal justice system, including the nature and consequences of a *Miranda* rights waiver. *See United States v. Goebel,* 959 F.3d 1259, 1269 (10th Cir. 2020) (stating that "suspects with prior experience in the criminal justice system are more likely to have knowingly waived their *Miranda* rights because '[t]he concepts encompassed by *Miranda* [are] not foreign' to them") (citation omitted).

Next, Defendant Busch argues that he did not make an intelligent waiver because the interviewing officers "failed to make any determination, through questioning or otherwise, as to Mr. Busch's state of mind prior to questioning," such as inquiring about alcohol or drug use, or sleep deprivation. (Doc. 117) at 3. Defendant Busch, however, was not impaired during the interview. Consequently, the interviewing officers had no reason to question Defendant Busch about a possible impairment.

In sum, the Court finds that, under the totality of the circumstances, Defendant Busch understood the oral reading of his *Miranda* rights and the written waiver of *Miranda* rights. That understanding, together with Defendant Busch's previous experience with the criminal justice system, shows Defendant Busch had a full awareness of both the nature of the *Miranda* rights being abandoned and the consequences of the decision to abandon those rights. Consequently, the United States has shown by a preponderance of the evidence that Defendant Busch knowingly and intelligently waived his *Miranda* rights.

### 2. Voluntary Waiver Miranda Rights

"The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." *Guillen*, 995 F.3d at 1123 (citations omitted). Such a question "logically can depend on 'the characteristics of

the accused,'" as opposed to any subjective intent on the part of the interviewer. *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004) (citation omitted). Consequently, to assess

> the voluntariness of a *Miranda* waiver, [courts] look at:
> "[1] the suspect's age, intelligence, and education;
> [2] whether the suspect was informed of his or her rights;
> [3] the length and nature of the suspect's detention and interrogation; and
> [4] the use or threat of physical force against the suspect."

*Guillen*, 995 F.3d at 1123 (citation omitted).

Defendant Busch argues that his waiver was not voluntary for several reasons. First, Defendant Busch argues that the interviewing officers "threatened" him with not seeing his children to compel his statements. (Doc. 117) at 3. Second, Defendant Busch argues that the interviewing officers "made implicit promises to sway the government attorneys' decisions regarding prosecution, but only if Mr. Busch provided all the information the deputies wanted." *Id.* Third, Defendant Busch argues that the interviewing officers used deceptions to elicit information from him.

> Sergeant Satterfield referred to Defendant Busch's children as follows:
>
> Three people have already talked before—you know, before you came here. So everybody is looking out for number one. Okay. This is your opportunity to look out for number one. Do you want to see your kids again before they graduate high school? This is your opportunity to come clean and just back up the details that I've already confirmed so that I can believe and I can tell the prosecutors, look, I believe this dude just went there for the bike. He didn't intend on killing this dude.

(Doc. 126-1) at 30-31. These statements did not occur until about 33 minutes after the start of the interview. The United States argues that the statement referring to Defendant Busch's children was not a threat or coercive, "but rather as [sic] an objective assessment that not confessing, not pleading guilty, and otherwise not cooperating could indeed result in Defendant's incarceration until after his children had graduated from high school." (Doc. 126) at 7. The Court agrees with the United States.

In *United States v. Hufstetler*, the First Circuit reviewed caselaw regarding the reference to family in police officer interrogations and concluded that although the caselaw "counsel[s] us to be particularly cognizant of the risk of coercion when reviewing interrogations where officers invoke references to a family member, our cases also emphasize that discussion of a family member, on its own, is not *per se* coercive." *United States v. Hufstetler*, 782 F.3d 19, 23-24 (1st Cir. 2015). The First Circuit further observed that courts "must closely examine the specific manner in which the officer discussed the relative and weigh such references against the defendant's susceptibility to coercion." *Id.* at 24. The First Circuit recently observed that "[t]he police also can talk truthfully about the likely consequences for children when a parent is arrested, jailed, convicted, or imprisoned." *Janusiak v. Cooper*, 937 F.3d 880, 891 (7th Cir. 2019), *reh'g denied* (Oct. 18, 2019).

The Court concludes that Sergeant Satterfield did not "threaten" Defendant Busch with not seeing his children to compel his statements. The upshot of Sergeant Satterfield's statements was that Defendant Busch would not see his children graduate from high school should he be convicted and imprisoned for the serious crimes he is charged with, a truthful assessment of the situation. Sergeant Satterfield encouraged Defendant Busch to provide information that could mitigate the seriousness of those charges. The manner in which Sergeant Satterfield discussed Defendant Busch's children, therefore, did not take undue advantage of any susceptibility to coercion Defendant Busch may have had.

Next, Defendant Busch argues that the above statements regarding Defendant Busch's children also contained an implicit promise of leniency: if Defendant Busch confesses, Sergeant Satterfield would tell prosecutors that Defendant Busch did not intend to kill the victim. "Under Supreme Court and Tenth Circuit precedent, a promise of leniency is relevant to determining

7

whether a confession was involuntary and, depending on the totality of the circumstances, may render a [waiver or] confession coerced." *United States v. Varela*, 576 Fed. Appx. 771, 778 (10th Cir. 2014) (citation omitted). However, "a 'limited assurance' … is permissible as an interrogation tactic" because it does not "critically impair a defendant's capacity for self-determination." *Id.* (citation omitted).

Here, Sergeant Satterfield's statements were noncommittal in that "[h]e did not describe any specific benefit [Defendant Busch] would enjoy if he cooperated or any particular penalty he would face if he did not." *Id.* In essence, Sergeant Satterfield merely stated that if Defendant Busch confessed to facts that showed he had no intent to kill the victim, then Sergeant Satterfield could tell prosecutors that Defendant Busch did not intend to kill the victim. Sergeant Satterfield's statements did not constitute a promise of leniency but rather informed Defendant Busch what information Sergeant Satterfield could relay to prosecutors depending on what Defendant Busch stated.

Even if Sergeant Satterfield's statements could be construed as a promise of leniency, under the totality of the circumstances, it was not so compelling as to overcome Defendant Busch's will. A promise to tell prosecutors that Defendant Busch did not intend to kill the victim, should Defendant Busch provide information to that effect, would not "have critically impaired [Defendant Busch's] ability to evaluate whether or not to waive his *Miranda* rights." *Id.* Sergeant Satterfield's statements "simply reinforced the obvious fact of which [Defendant Busch] was clearly aware-that cooperation with law enforcement officers could be beneficial." *Id.*

Defendant Busch's argument regarding the interviewing officers' use of deceptions during the interview fares no better. "It is well-settled that a confession is not considered

coerced merely because the police misrepresented to a suspect the strength of the evidence against him." *Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997), *overruled on other grounds by Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007).  Such police misrepresentations can even include "that the murder victim was still alive, that nonexistent witnesses have been found, that the murder weapon had been uncovered, that defendant's prints were found at the crime scene, and that an accomplice had confessed and implicated the defendant." *Id.* (citation omitted).  Those kinds of deceptions "will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir. 1993).  In fact, "there is nothing inherently wrong with efforts to create a favorable climate for confession." *Id.* (citation omitted).  "As the Supreme Court said in *Schneckloth v. Bustamonte,* 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973), 'very few people give incriminating statements in the absence of official action of some kind.'" *Id.*  Given that either no promise of leniency was made in this case or, if there was a promise of leniency, it did not critically impair the voluntariness of the *Miranda* waiver, and the otherwise non-threatening nature of the interview, the Court concludes that the deceptions did not affect the overall impact of the interview in such a way as to cause Defendant Busch's will to be overborne.  *Cf. United States v. Lopez,* 437 F.3d 1059, 1065 (10th Cir. 2006) (holding that "agents' misrepresentation of the evidence against Lopez, together with Agent Hopper's promise of leniency to Lopez if he confessed to killing Box by mistake, are sufficient circumstances that would overbear Lopez's will and make his confession involuntary").

      Furthermore, the Court considers the following voluntariness factors:  (1) Defendant Busch was in his 30s and, thus, a mature adult; (2) Defendant Busch understood the questioning; (3) Defendant Busch has a ninth-grade education but was intellectually capable of working as a

roughneck in the oilfields; (4) the interview lasted only 80 minutes, a not unduly lengthy interview; (5) the interviewing officers provided Defendant Busch with water; (6) the interviewing officers did not use physical force against Defendant Busch; and (7) the interview room and the interviewing officers, in their dress and demeanor, did not create an intimidating environment.  Having rejected Defendant Busch's lack of voluntariness arguments, the totality of the above circumstances demonstrates that neither Sergeant Satterfield nor Detective Dugas overcame Defendant Busch's will through physical or psychological coercion.  Consequently, the United States has carried its burden of proving by a preponderance of the evidence that Defendant Busch voluntarily waived his *Miranda* rights..

For all of the foregoing reasons, the Court concludes that Defendant Busch knowingly, intelligently, and voluntarily waived his *Miranda* rights when he acknowledged Sergeant Satterfield's reading of the *Miranda* advisement form, and initialed and signed the *Miranda* rights waiver.

### B.  Need to be Re-Mirandized After the Break

"Numerous courts have rejected the argument that the passage of time alone invalidates previously given *Miranda* warnings."  *Mitchell v. Gibson*, 262 F.3d 1036, 1057 (10th Cir. 2001).  "Courts have consistently upheld the integrity of *Miranda* warnings even in cases where 'several hours' have elapsed between the reading of the warning and the interrogation."  *Id.* at 1056-57 (citations omitted).  A defendant continues to validly waive *Miranda* rights "unless the circumstances changed so seriously that [the defendant's] answers no longer were voluntary, or unless [the defendant] no longer was making a 'knowing and intelligent relinquishment or abandonment' of [the defendant's] rights."  *Id.* at 1058 (citations omitted).  To make such an assessment, courts examine "whether the character of the interrogation had changed

significantly, and whether the questions put to the defendant subsequently would have caused [the defendant] to forget the rights of which [the defendant] had been advised and which [the defendant] had previously understood." *Id.* (citation omitted).

In this case, except for a brief five-minute break, the character of the interview did not change, let alone changed to such a serious extent that Defendant Busch's answers were no longer voluntary or that Defendant Busch no longer knowingly and intelligently waived his *Miranda* rights. After the break, the same two interviewing officers were present in the same interview room conducting the interview in the same manner as before the break and on the same subject matter. Moreover, considering Defendant Busch waived his *Miranda* rights only about 40 minutes prior to the break, the briefness of the break, and the questioning after the break, the Court cannot find that the situation would have caused Defendant Busch "to forget the rights of which he had been advised and which he had previously understood." *Id.* Under the totality of these circumstances, the United States has shown by a preponderance of the evidence that the interviewing officers were not required to re-*Mirandize* Defendant Busch after the break.

*III. Conclusion*

The United States has shown by a preponderance of the evidence that the totality of the circumstances demonstrates that Defendant Busch knowingly, intelligently, and voluntarily waived his *Miranda* rights throughout the interview and that there was no need to re-*Mirandize* Defendant Busch after the brief break in the interview. Consequently, neither Sergeant Satterfield nor Detective Dugas violated Defendant Busch's Fifth Amendment right against self-incrimination. Accordingly, the Court will deny the Motion to Suppress Donald A. Busch's Statement and Memorandum in Support (Doc. 117).

IT IS ORDERED that the Motion to Suppress Donald A. Busch's Statement and Memorandum in Support (Doc. 117) is denied.

_____
UNITED STATES DISTRICT JUDGE