IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. CR 20-1486-2 KG

DONALD ALFRED BUSCH,

    Defendant.

## ORDER AND STATEMENT OF REASONS

On November 12, 2021, a jury convicted Defendant Donald Alfred Busch on Count 1, conspiracy to commit carjacking, Count 2, carjacking resulting in death, Count 4, brandishing a firearm during and in relation to a crime of violence, and Count 7, being a felon in possession of a firearm or ammunition. (Doc. 286) (Busch Verdict). Mr. Busch filed Objections to the Presentence Investigation Report (PSR), (Doc. 326), and the United States responded, (Doc. 345).[1] For the following reasons the Court sustains-in-part and overrules-in-part the Objections. In addition, the Court has considered all of the sentencing factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including those described below.

I.  *Objections*

Mr. Busch raises several issues with the PSR. At the outset, much of what Mr. Busch raises cannot be considered an "objection" so much as a clarification or addition to the PSR. Mr. Busch provides substantial detail regarding his background, history, family, and personal characteristics. *See* (Doc. 326) at 4-30. The Court has taken this additional information into

---

[1] The United States' response deals with application of the discretionary downward departure in Guideline § 2A1.1 Application Note 2.B. *See* (Doc. 313). For the reasons discussed below, the Court overrules-in-part and sustains-in-part these objections, but otherwise does not expressly discuss the United States' objections.

consideration in fashioning this sentence, but does not consider this information as "objections" to the PSR.

Mr. Busch raises two colorable objections to the PSR and moves for a variance.

*(A) Objection No. 1: Criminal History Calculation*

The United States Probation Office calculated Mr. Busch as having 12 criminal history points, putting him in Category V. Mr. Busch does not explicitly dispute the Criminal History Calculation, but argues it overrepresents his actual threat to the community. (Doc. 326) at 3-4. To the extent Mr. Busch does not challenge the calculation, the Court adopts the calculation and finds that Mr. Busch has 12 criminal history points, which puts him in Category V. The Court will consider Mr. Busch's arguments regarding the severity of his history in deciding his sentence, but overrules this objection to the extent Mr. Busch argues he should be in a different Criminal History Category.

*(B) Objection No. 2: Calculation of Offense Level*

In calculating the offense level, the Court begins by calculating the base offense level applicable, applying any adjustments, followed by any departures, and finally, any request for variance.

Mr. Busch does not object to the Court applying Guideline § 2B3.1, because carjacking is a form of robbery. *See United States v. Patton*, 927 F.3d 1087, 1100 (10th Cir. 2019). Mr. Busch also agrees that Guideline § 2B3.1(c)(1), the cross reference directing the Court to apply Guideline § 2A1.1 (First Degree Murder) when "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States," applies. Guideline § 2A1.1 provides a base offense level of 43.

The Court agrees that the cross-reference in Guideline § 2B3.1(c)(1) applies to this case, such that Guideline § 2A1.1 provide the base offense level of 43. *See generally United States v. Lowell*, 2 F.4th 1291, 1298–1300 (10th Cir. 2021). The Court finds that the base offense level is 43, pursuant to Guidelines §§ 2B3.1(c)(1) and 2A1.1.

The United States Probation Office recommends a two-level upward adjustment for obstruction of justice, pursuant to Guideline § 3C1.1. This Guideline provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. The Probation Officer makes this recommendation based on two things: first, the gun Mr. Busch drew on the victim was never recovered by law enforcement; and second, Mr. Busch evaded capture, despite knowing that law enforcement was looking for him, for nearly a week after the carjacking.

The Application Notes are particularly instructive for the Court's consideration. First:

> This adjustment applies if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant.
>
> Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.

USSG § 3C1.1 (Application Note 1). However,

> [t]his provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or

statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

USSG § 3C1.1 (Application Note 2). The Sentencing Commission provided several non-exhaustive examples of the types of conduct to which this adjustment applies, including:

> (D) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender[.]

USSG § 3C1.1 (Application Note 4). "'Material' evidence, fact, statement or information, as used in this section, means evidence, fact, statement or information that, if believed, would tend to influence or affect the issue under determination." USSG § 3C1.1 (Application Note 6).

The gun Mr. Busch brandished at the victim was not recovered by law enforcement. Coupled with Mr. Busch's attempts to evade law enforcement for several days, including reports that he hid at various residences and even in a field, this suggests that Mr. Busch intentionally disposed of the firearm to thwart any investigation of the carjacking and death. The firearm is material to the carjacking, as an instrument of violence used to intimidate the victim, and to Counts 4 and 7, both relating to possession and brandishment of the gun. Had law enforcement been able to recover the gun, the actual weapon would have been introduced as direct evidence of Mr. Busch's crimes.

The Court finds that Mr. Busch's obstructive conduct, that is, disposing of the gun while hiding for several days, occurred with respect to the investigation of and related to the carjacking resulting in death. The Court further finds, by a preponderance of the evidence, that this

obstructive conduct was purposefully calculated and likely to thwart the investigation of the offense of conviction. Therefore, the Court overrules Mr. Busch's objection and applies the two-level upward adjustment as directed by Guideline § 3C1.1, for an adjusted offense level of 45.[2]

Next, Mr. Busch objects to the offense level calculation because the Probation Officer did not recommend a two-level downward adjustment for Acceptance of Responsibility pursuant to USSG § 3E1.1. This Guideline provides for a two-level downward adjustment "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). Relevantly,

> [t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

USSG § 3E1.1 (Application Note 2).

Mr. Busch did not merely challenge the constitutionality of the statute or that the statute applied to his conduct. Instead, he asserted that he was picking up a motorcycle *with permission*. This is not an acceptance of responsibility. While Mr. Busch seems to express remorse now, after the trial, he did not accept responsibility for his actions before trial. Therefore, the Court overrules this objection and declines to apply a two-level downward adjustment for acceptance of responsibility.

---

[2] The Court remains cognizant that the Guidelines max out at offense level 43.

Therefore, Mr. Busch's adjusted offense level remains at 45.

After calculating the adjusted offense level, the Court considers whether the Guidelines counsel any departures. While Guideline § 2B3.1(c)(1) directs the Court to Guideline § 2A1.1 (First Degree Murder), Application Note 2.B (Felony Murder) states:

> If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted. For example, a downward departure may be warranted if in robbing a bank, the defendant merely passed a note to the teller, as a result of which the teller had a heart attack and died. The extent of the departure should be based upon the defendant's state of mind (e.g., recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying offense conduct. However, departure below the minimum guideline sentence provided for second degree murder in § 2A1.2 (Second Degree Murder) is not likely to be appropriate. Also, because death obviously is an aggravating factor, it necessarily would be inappropriate to impose a sentence at a level below that which the guideline for the underlying offense requires in the absence of death.

USSG § 2A1.1 (Application Note 2.B). Guideline § 2A1.2 (Second Degree Murder) provides a base offense level of 38.

Mr. Busch urges the Court to depart downward to offense level 38, as authorized by Guideline § 2A1.1 Application Note 2.B, because he was not the shooter and was not in the immediate vicinity when the shots were fired.

The Court determines that Application Note 2.B applies, allowing the Court to exercise its discretion to depart downward as low as level 38. In determining the extent of the departure, the Court may consider conduct underlying an acquitted charge so long as the government proves the conduct by the preponderance of the evidence. *Magallanez*, 408 F.3d at 684–85. The Court agrees that Mr. Busch did not commence the carjacking with the purpose of killing the victim. However, the Court finds that his actions were, at best, seriously negligent. Mr. Busch instigated the carjacking based on apparent jealousy over an ex-girlfriend. He convinced his co-defendants to aid him in carjacking the victim. He drew a gun on the victim. Mr. Busch and his

co-defendants announced their presence to the victim and knew that the victim was likely armed. Mr. Busch's conduct involved a high degree of inherent risk, and the nature of the underlying offense similarly invited violence.

Based on this conduct, which the Court finds by a preponderance of the evidence, the Court will depart downward to level 38.

In exercising its discretion, the Court notes the similarities between this case and *United States v. Lowell*, 18-cr-1108 KG, in which the Court applied the cross-reference and the Application Note to depart downward to level 38. In *Lowell*, the defendant fled a U.S. Border Patrol immigration checkpoint in a stolen vehicle. 2 F.4th at 1293. During the ensuing chase, the defendant blew a tire and stopped in oncoming traffic. He approached another vehicle with a loaded gun, "pointed the gun at the driver and demanded he turn over the vehicle." *Id.* Border Patrol agents terminated the chase "rather than risk endangering the public with a high-speed chase on busy urban roads." *Id.* at 1294. Approximately two and a half hours elapsed between Border Patrol agents terminating the chase and the commencement of a second chase. During the second chase, the defendant "drove with and against traffic … [and] wove in and out of traffic on city streets and highways, sped through red lights, hit a police vehicle, and drove through a fence onto an access road." *Id.* The chases ended when the defendant "struck a motorcycle and killed the driver." *Id.*

The facts of *Lowell* present undeniably culpable conduct. While the defendant in *Lowell* was driving his vehicle at a high rate of speed and directly struck the decedent, Mr. Busch similarly instigated and initiated the events leading to the victim's death in this case. Testimony, including Mr. Busch's own recorded statement to police, showed that Mr. Busch concocted the plan to "jack" the motorcycle and "punk" the victim. Video evidence and testimony show that

Mr. Busch brandished his firearm at the victim. That the victim may have fired first, as the co-defendants started to drive away, and that Mr. Busch was not involved in the actual shooting is of little moment: Mr. Busch and his co-defendants initiated the encounter and invited the violence. Mr. Busch's conduct evinces a similar degree of negligence and disregard for life as the high-speed chase in *Lowell*. Accordingly, the Court finds that the same downward departure is appropriate.

In this way, the Court sustains-in-part and overrules-in-part Mr. Busch's objections and calculates the total offense level as 38, after applying the applicable adjustment and departure.

II.   *Analysis*

The Court determined that Mr. Busch is in Criminal History Category V and has a total offense level of 38. Therefore, the Guidelines provide a sentencing range of 360 months to life imprisonment. The Probation Office recommends sentencing Mr. Busch to 360 months. Mr. Busch requests a variance to fifteen (15) years. (Doc. 326) at 31. The United States requests a sentence reflecting "no significant departure from the first-degree murder base offense level of 43," which carries a "range" of life imprisonment. (Doc. 345) at 9-10.

In determining an appropriate sentence and to avoid unwarranted sentencing disparities, the Court considered other sentences imposed under roughly similar circumstances. For example, in *Lowell*, the Court imposed a top-of-the-Guidelines-range sentence of 365 months for the carjacking resulting in the death of the motorcyclist, as described above. As the Court noted, *supra*, the conduct at issue in *Lowell* was approximately as culpable as Mr. Busch's conduct in this case. Mr. Busch did not discharge his firearm at the victim, but he did instigate the series of events leading to the killing, the carjacking was his idea, and he was the ringleader.

In 2021, the Fourth Circuit Court of Appeals, sitting in *habeas corpus* review following a change in law announced by *Montgomery v. Louisiana*, 577 U.S. 190 (2016), upheld a fifty-two-year sentence (624 months) for a fifteen-year-old juvenile offender convicted for a "series of carjackings, beatings, and murders in Virginia." *United States v. Friend*, 2 F.4th 369, 372 (4th Cir. 2021). The defendant in that case, with co-conspirators, murdered two victims and severely beat a third over the course of two months. *Id.* at 373–74. The trial court originally sentenced the defendant to 180 months' imprisonment for the carjacking that resulted in a beating, and life imprisonment without parole for the carjacking resulting in death. *Id.* at 374. That sentence was later reduced to 52-years. *Id.* at 376. The conduct in *Friend* was more egregious and heinous than the conduct in this case, because the defendant in *Friend* carjacked multiple individuals on separate occasions, severely beat one victim, and participated in the murder of two others. That conduct evinced a degree of intent and willfulness with respect to the taking of a life that is not present in this case.

In *Bruzón-Velázquez*, the defendant discussed the possibility of committing a robbery with four other individuals, and ultimately selected a victim with his co-conspirators. *United States v. Bruzón-Velázquez*, 49 F.4th 23, 27 (1st Cir. 2022). The defendant forced the victim into a vehicle at gunpoint, drove to a remote area, forced the victim out of the vehicle, then fatally and repeatedly shot the victim in the head with a .40 caliber Glock pistol. *Id.* After the killing, the defendant boasted about his deeds. *Id.* The defendant pleaded guilty, pursuant to a plea agreement, and then appealed. In September 2022, the First Circuit upheld a sentence of life imprisonment for discharging a firearm during and in relation to a crime of violence resulting in death and a sentence of fifteen years' (180 months) imprisonment for attempted carjacking. The offenses of conviction in that case differ from this case, notably because *attempted* carjacking

carries a maximum sentence of fifteen years. *See id.* at 29. Nonetheless, the total sentence and the factual scenario inform this Court's decision in this case. Again, the conduct in *Bruzón-Velázquez* was more severe and showed the premediated, intentional taking of a human life.

*United States v. Felder*, 999 F.3d 57 (2d Cir. 2021), similarly reflects a more serious factual scenario. In that case, the defendant, over the course of eight (8) days, "killed two livery cab drivers by shooting each in the head while stealing their cabs for use in armed robberies." *Id.* at 61. The defendant was convicted on two counts of carjacking resulting in death, and seven other charges, and sentenced to a total of life imprisonment plus 34 years. *Id.* The court sentenced the defendant to concurrent terms of life imprisonment on each of the carjackings. *Id.* at 63 n.2. The Second Circuit upheld that sentence. *Id.* at 61. Unlike *Felder*, Mr. Busch did not commit premeditated murder when effecting the carjacking at issue.

The Court also considered sentences imposed in carjacking cases that did not result in a death. For example, Judge Browning sentenced a defendant to 156 months' imprisonment, each, on two counts of carjacking, aiding and abetting, without a finding of bodily injury or death. *See United States v. Folse*, 15-cr-2485-001 JB (Doc. 276) (Judgment entered Apr. 3, 2019). Similarly, Judge Riggs sentenced a defendant to 72 months' imprisonment for a simple carjacking without a finding of bodily injury or death. *See United States v. Stallworth*, 20-cr-1885-001 KWR (Doc. 45) (Judgment entered Feb. 23, 2022). This Court sentenced a defendant to 156 months' imprisonment on a simple carjacking, without a finding of bodily injury or death. *See United States v. Hernandez*, 19-cr-4184-001 KG (Doc. 179) (Judgment entered July 27, 2022).

III.     *Additional 18 U.S.C. § 3553 Factors for Consideration*

In addition to the § 3553 as described above, the Court notes Mr. Busch's long history of using and abusing controlled substances and grew up in a household where drugs and alcohol were commonplace, resulting at least in part his parents' separation when he was still at a young age. The Court also notes Mr. Busch's lack of guidance, resulting in his chronic absenteeism from school and failure to graduate from high school. The Court also notes Mr. Busch's criminal history, which includes juvenile delinquency and a long string of criminal and felony convictions, beginning at age 18 and continuing and resulting in 12 convictions; he has a demonstrated history of not complying with conditions of court supervision, resulting in multiple probation revocations. The Court notes, however, that many of the convictions are consistent with someone who has struggled with addiction, for example use or possession of drug paraphernalia as well as shoplifting. Indeed, Mr. Busch's history of abusing drugs is long, and includes methamphetamine and has resulted in many problems for his family and specifically his children. Additionally, the Court notes the very untimely death of Mr. Busch's mother, who passed away just about 18 months before he was arrested for these crimes.

The Court also considers the facts and circumstances surrounding these offenses, which, after a jury trial are clear. Including that while Mr. Busch did not discharge his firearm, he chiefly instigated the violence that was perpetrated and that resulted in the death of Justin Swenson, at one point, as a convicted felon, drawing his firearm and pointing it directly at Mr. Swenson while in the process of carjacking a motorcycle and causing Mr. Swenson to retreat into his home, moments before the shooting started and before being fatally struck in the head with one round.

Based on the circumstances presented by this case, the Court finds that a variance would be inappropriate and, therefore, denies Mr. Busch's motion for a downward variance.

IV.  *Sentencing*

For all the foregoing reasons, and the Court having adopted the factual representations of the PSR, and having considered written and oral arguments of counsel, having considered the Guidelines and exercising discretion to depart downward, and all the § 3553(a) factors, and foregoing court decisions, the Court imposes the following sentences:

As to Count 1 of the Superseding indictment, Conspiracy to Commit Carjacking, the Court hereby sentences Mr. Busch to the statutory maximum of 60 months' imprisonment;

As to Count 7, Felon in Possession of a Firearm, the Court sentences Mr. Busch to the statutory maximum of 120 months' imprisonment;

And as to Count 2, Carjacking resulting in the death of Justin Swenson, the Court sentences Mr. Busch to a term of 396 months' imprisonment;

And as to Count 4, Brandishing a Firearm During and in Relation to a Crime of Violence, the Court sentences Mr. Busch to a term of 84 months' imprisonment.

The terms for 1, 2, and 7 shall run concurrently.

The term for Count 4, by law, shall run consecutively to the terms imposed in Counts 1, 2, and 7, resulting in a total sentence of 480 months', or 40 years', imprisonment.

The Court is persuaded that the sentence, as imposed, is enough. That is, it is sufficient and not more than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a)(1)-(7), including to provide just punishment and to protect the public. Additional elements of sentencing, including the term of supervised release and conditions thereof, are as discussed on the record and reflected in the Judgment.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE